IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS, INDIANA

| | |
|---|---|
| DEREK SMITH, | ) |
|     Plaintiff, | ) |
| | ) |
| | ) CAUSE NO. 1:20-cv-311 |
| v. | ) |
| | ) |
| AAR AIRCRAFT SERVICES | ) |
|     Defendants. | ) |

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, named-above, complains of act and omissions to act by the Defendant. In support of his Complaint and as cause of action against Defendant, Plaintiff respectfully submits the following:

JURISDICTION

1. This suit is authorized and instituted pursuant to the Title VII 42 U.S.C. § 2000e; 42 U.S.C. § 1981 as amended by the Civil Rights Act of 1991; 28 U.S.C. §§ 1331 and 1343.

2. Plaintiff filed a claim with the Equal Employment Opportunity Commission (EEOC) and received a notice of right to sue on or about October 28, 2019.

PARTIES

3. Plaintiff, at all relevant times, resided in the Southern District of Indiana.

4. Defendant is a corporation doing business in the State of Indiana in the Southern District of Indiana.

FACTS

5. Plaintiff began working for the Defendant January 2008, as a Support Technician.

6. Plaintiff was laid off from his employer, but rehired in August 2008, as a Mechanic.

7. In May 2018, Plaintiff complained to Human Resource about a noose that was placed on his work desk.

8. Plaintiff's complaint was not investigated.

9. Plaintiff continued to experience difficulty at the workplace relating to stress and a hostile work environment.

10. On or about May 18, 2018, Chad Meyers, lead mechanic and Jillian Amontee, Inspector, stated on their personal social media pages that Plaintiff was a bother to work with at the corporation.

11. On or about May 19, 2018 Plaintiff received a write up regarding his conduct pertaining to completing tech cards for other employees.

12. Although Plaintiff received a write up for completing tech cards for other employees, Plaintiff was praised and complimented by the Vice President for assisting the other employees in completing the assignment and being a good team lead.

13. On or about January 2019, Chad Meyers notified Plaintiff's supervisor that Plaintiff was not in the appropriate job location.

14. It was later determined that Plaintiff had direct instructions from Supervisor, Jeff Beck to be outside of his regular job location.

15. On or about February 3, 2019, Chad Meyers emailed a supervisor complaining that Plaintiff did not have permission to clock in on a timecard.

16. As result, Plaintiff was immediately called to the Human Resource Department for a meeting with several managers and the Human Resource Director, Heather Vancorp.

17. During the meeting, Plaintiff was questioned about clocking in on the timecard.

18. The meeting was structured to determine if Plaintiff would be terminated.

19. After discussion, it was determined that Plaintiff had permission to clock in on the timecard.

20. Despite the fact that it was determined that Plaintiff had permission to clock in on the timecard, Plaintiff was nonetheless suspended for three (3) days without pay and demoted from lead mechanic to a regular mechanic.

21. On or about February 6, 2019, Plaintiff's first day back from suspension, the Human Resource Director, Heather Vancorp received Plaintiff's formal complaint in writing regarding Plaintiff's grievances.

22. Plaintiff requested Family Medical Leave documentation from the Human Resource Director, Heather Vancorp.

23. The Human Resource Director, Heather Vancorp gave Plaintiff the appropriate Family Medical Leave forms to take to his therapist due to stress and harassment matters on the job.

24. Plaintiff was approved to take time off under the Family Medical Leave Act.

25. Plaintiff sought the assistance of a professional therapist while on Medical Leave to assist with any relief to his workplace stress and hostile work environment.

26. On or about September 6, 2019, Plaintiff returned from Family Medical Leave.

27. Upon the Plaintiff's return on Sunday, September 8, 2019, Plaintiff found a noose on top of Plaintiff's toolbox.

28. Plaintiff informed Supervisor, Jeff Beck that a noose was placed on top of his toolbox.

29. Supervisor, Jeff Beck allowed Plaintiff to leave for the day and approved Plaintiff's vacation request over several weeks.

30. Plaintiff used three and one-half weeks of vacation time to recover from the stressful and harassing situation at his place of employment.

31. Plaintiff additionally sought the assistance of his professional therapist.

32. Plaintiff's professional therapist recommended additional time off from the workplace.

33. Plaintiff was recommended by his therapist, Dr. Compton to take additional time off.

34. Upon the therapist recommendation the Plaintiff was off work from October 6, 2019 until November 6, 2019.

35. On or about November 6, 2019, Plaintiff returned back to work and was informed that his schedule was no longer the same.

36. The Defendant changed Plaintiff's work schedule from swing shift to days shift.

37. Plaintiff questioned the reason for his change in his schedule.

38. The Defendant informed Plaintiff that he would need to accept the change or be terminated.

39. Plaintiff complied with the new schedule.

40. On or about December 14, 2019, Plaintiff requested approval to participate in the "day trade" opportunity.

41. Plaintiff specifically requested the following "day trade" days off: December 15, 2019 and December 16, 2019.

42. Plaintiff was approved for the "day trade" opportunity by team lead member, Coray Simmons.

43. Team lead, Coray Simmons documented and stamped the approval.

44. Plaintiff informed direct supervisor, Michael (last name unknown) of the approval.

45. Direct supervisor, Michael (last name unknown) informed Plaintiff verbally that Plaintiff's request was approved.

46. Approval for "day trade" opportunities has been conducted in this fashion the entire time of Plaintiff's employment.

47. Plaintiff was suspended for two (2) days upon his return to work from the "day trade" opportunity based on the Defendant indicating that Plaintiff violated the no-call no show policy.

48. Plaintiff was suspended without pay on December 22, 2019 and December 23, 2019.

49. Plaintiff was suspended by Plaintiff's manager, Brett McPherson.

50. Manager, Brett McPherson suspended Plaintiff indicating that Plaintiff did not have approval to participate in the "day trade" opportunity.

51. Plaintiff's suspension resulted in the Plaintiff accumulating nine (9) points in his personnel file.

52. Plaintiff additionally received a written warning stating any other incidents would result in a direct termination.

53. Plaintiff resigned on December 29, 2019.

## COUNT I

54. Plaintiff incorporates by reference paragraphs 1 through 43.

55. Defendant as a result of engaging in an adverse action, specifically racial discrimination against the Plaintiff violated Title VII 42 U.S.C. § 2000e; 42 U.S.C. § 1981 as amended by the Civil Rights Act of 1991; 28 U.S.C. §§ 1331 and 1343.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court grant the following relief:

A. Award Plaintiff any and all back pay and benefits lost.

B. Award Plaintiff compensatory damages for future pecuniary loss, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

C. Award Plaintiff punitive damages.

D. Award Plaintiff his costs in this action and reasonable attorney fees.

E. Grant Plaintiff any and all other relief which is allowable under the circumstances of this case.

Respectfully submitted,

Law Office of Deidra N. Haynes, LLC

/s/ Deidra N. Haynes
Deidra N. Haynes, #28968-49
Attorney for Plaintiff

## REQUEST FOR JURY TRIAL

Comes now the Plaintiff, by counsel, and requests that this cause be tried by jury.

Respectfully submitted,

/s/ Deidra N. Haynes
Deidra N. Haynes, #28968-49

Law Office of Deidra N. Haynes, LLC
6437 Rucker Road, Suite E
Indianapolis, Indiana 46204
Phone: 317-982-7396